IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
MADISON DIVISION

| | |
|---|---|
| OREGON POTATO COMPANY d/b/a RADER FARMS, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) No. 3:20-cv-00092 |
| KERRY INC. | ) ) ) |
| Defendants. | ) |

## KERRY INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO THE COMPLAINT OF OREGON POTATO COMPANY

Defendant Kerry Inc. ("Kerry"), by and through its undersigned counsel, states the following in response to the Complaint of Plaintiff Oregon Potato Company ("OPC").

## ANSWER

Introductory Paragraph.  Oregon Potato Company, d/b/a Rader Farms, by its counsel, Swanson, Martin & Bell, LLP, states as follows for its Complaint at Law against Defendant, Kerry Inc.:

**ANSWER:**   The introductory paragraph of the Complaint does not contain any factual allegations to which a response is required.  To the extent that a response is required, Kerry denies the allegations in the introductory paragraph.

1.   Plaintiff, Oregon Potato Company d/b/a Rader Farms ("OPC") is a producer, manufacturer and distributor of food products.  OPC is incorporated under the laws of the state of Washington with its principal place of business located at 6610 W Court Street, Ste. #B, Pasco, WA 99301.

**ANSWER:**   Kerry admits that OPC is a producer, manufacturer, and distributor of food products.  Kerry lacks knowledge or information sufficient to form a belief about whether OPC is incorporated under the laws of the state of Washington with its principal place of business located at 6110 W. Court Street, Ste. B, Pasco, WA 99301 and, therefore, denies such allegations.

2.     Defendant Kerry Inc. ("Kerry") is a global manufacturer and distributer of food, beverage and pharmaceutical products.  Kerry is incorporated under the laws of the state of Delaware with its principal place of business located at 3400 Millington Road, Beloit, Wisconsin 53511.

**ANSWER:**   Kerry admits the allegations in paragraph 2.

3.     Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**ANSWER:**   Paragraph 3 states only jurisdictional allegations to which no response is required.  To the extent that a response is required, Kerry lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 3 and, therefore, denies such allegations.

4.     Venue in the District Court for the Western District of Wisconsin is proper pursuant to 28 U. S.C. §1391 because Defendant Kerry resides in this District and because a substantial part of the events or omissions on which the claims are asserted herein occurred in this District.

**ANSWER:**   Paragraph 4 states only venue allegations to which no response is required. To the extent that a response is required, Kerry admits that it resides in the Western District of Wisconsin.  Kerry denies the remaining allegations in paragraph 4.

5.     This is a breach of contract case which arises from Kerry's failure to fulfill various acknowledged and accepted purchase orders from OPC.

**ANSWER:**   Kerry admits that OPC has filed suit against Kerry purporting to assert a claim for breach of contract.  Kerry denies the remaining allegations in paragraph 5.

6.     As a result of Kerry's failure to perform its contractual obligations, Kerry caused OPC to incur damages of approximately $2,600,000.

**ANSWER:**   Kerry denies the allegations in paragraph 6.

7.     Prior to March 3, 2019, OPC entered into an agreement with third-party Jamba Juice whereby OPC was granted a license to manufacture and distribute to retailers under the Jamba Juice brand name various flavors of frozen smoothie mix, which consumers could purchase to mix frozen smoothies at home.

**ANSWER:**   Kerry admits that OPC has and/or had an agreement with Jamba Juice. Kerry lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 7 and, therefore, denies such allegations.

8.   The frozen smoothie mix was known as "Jamba At Home Smoothies," and featured various flavors within the product line.

**ANSWER:**   Kerry admits that there was a frozen smoothie mix known as "Jamba At Home Smoothies" that featured various flavors within the product line. Kerry denies any remaining allegations in paragraph 8.

9.   As one of its key ingredients, the Jamba At Home Smoothies required certain yogurt cubes (the "Product").

**ANSWER:**   Kerry admits that one ingredient of Jamba At Home Smoothies was yogurt chips. Kerry denies the remaining allegations in paragraph 9.

10.   Prior to March 3, 2019, Kerry was aware of OPC's agreement with Jamba Juice and OPC's need for the Product.

**ANSWER:**   Kerry admits that, prior to March 3, 2019, it was aware that OPC had an agreement with Jamba Juice and was aware that OPC purchased yogurt chips from Kerry to include in Jamba At Home Smoothies. Kerry expressly denies that it was aware of the terms of the agreement between OPC and Jamba Juice. Kerry denies the remaining allegations in paragraph 10.

11.   Prior to March 3, 2019, Kerry developed, created and marketed the Product that would allow OPC to sell the Jamba At Home Smoothies.

**ANSWER:**   Kerry admits that, prior to March 3, 2019, it manufactured and marketed yogurt chips that OPC purchased from Kerry and included in Jamba At Home Smoothies. Kerry denies any remaining allegations in paragraph 11.

12.   Prior to March 3, 2019, Kerry knew OPC entered into agreements with various retailers pursuant to which OPC would supply said retailers with the Jamba At Home Smoothies,

and the retailers agreed to allot certain shelf space in their stores to sell the Jamba At Home Smoothies.

**ANSWER:**   Kerry denies the allegations in paragraph 12.

13. Between March 3, 2019 and May 23, 2019, OPC placed eleven (11) purchase orders (the "Purchase Orders") with Kerry for the purchase of the Product. (*See* OPC's Purchase Orders attached as **Exhibit A**).

**ANSWER:**   Kerry admits that OPC emailed Kerry purchase orders for the purchase of yogurt chips. The attached documents, which may or may not be authentic or complete, speak for themselves, and Kerry need not admit or deny OPC's descriptions of the contents of the documents. To the extent that a response is required, Kerry denies the remaining allegations in paragraph 13 as an incomplete and/or inaccurate summary of the attached documents.

14. In response to each Purchase Order, Kerry confirmed each order and sent to OPC a "Kerry Ingredients & Flavors Order Acknowledgment." (the "Kerry Acknowledgements") (*See* Kerry Acknowledgements, attached as **Exhibit B**).

**ANSWER:**   Kerry admits that it emailed OPC Kerry Ingredients & Flavors Order Acknowledgements in response to purchase orders emailed to Kerry. The attached documents, which may or may not be authentic or complete, speak for themselves, and Kerry need not admit or deny OPC's descriptions of the contents of the documents. To the extent that a response is required, Kerry denies the remaining allegations in paragraph 14 as an incomplete and/or inaccurate summary of the attached documents.

15. The Purchase Orders and Kerry Acknowledgments created valid and enforceable contracts for the purchase and sale of goods, namely the Product.

**ANSWER:**   Paragraph 15 contains only legal conclusions to which no response is required. To the extent that a response is required, Kerry denies the allegations in paragraph 15.

16. Pursuant to the Purchase Orders and Order Acknowledgements, Kerry was to make delivery of all ordered Product between June 2019 and August 2019.

**ANSWER:**   Kerry denies the allegations in paragraph 16.

17. Kerry failed to deliver the Product between June 2019 and August 2019.

**ANSWER:** Kerry admits that it did not deliver yogurt chips to OPC between June 2019 and August 2019 before OPC cancelled all purchase orders for yogurt chips. Kerry denies any remaining allegations in paragraph 17.

18. Prior to March 3, 2019, and at all relevant times, Kerry was aware of the extensive financial losses incurred by OPC as a result of Kerry's nonperformance of the Purchase Orders.

**ANSWER:** Kerry denies the allegations in paragraph 18.

19. At all relevant times, there were no other yogurt cubes, or other reasonable substitutes for the Product, available on the market that could be purchased by OPC to allow OPC to continue the distribution and sale of the Jamba At Home Smoothies.

**ANSWER:** Kerry denies the allegations in paragraph 19.

20. Prior to March 3, 2019, and at all relevant times, Kerry knew there was no reasonable substitute for the Product which OPC could purchase from another seller, and that OPC would sustain significant economic losses if Kerry failed to supply the Product as contracted.

**ANSWER:** Kerry denies the allegations in paragraph 20.

21. Of the eleven (11) Purchase Orders, Kerry completely failed to deliver any amount of the Product OPC ordered under nine (9) of the Purchase Orders. For the remaining two (2) Purchase Orders, Kerry delivered only part of the amount ordered and did so nearly one month late and nearly two months late, respectively.

**ANSWER:** Kerry admits that, for certain OPC purchase orders, Kerry did not deliver yogurt chips before OPC cancelled the orders and that, for other OPC purchase orders, Kerry delivered part of the amount ordered before OPC cancelled the orders. Kerry denies the remaining allegations in paragraph 21.

22. As a result of Kerry's failure to supply the Product, OPC was not able to distribute or sell Jamba At Home Smoothies.

**ANSWER:** Kerry denies the allegations in paragraph 22.

23. Due to Kerry's failure to supply the Product, OPC sustained actual, incidental and consequential damages, and ongoing damages of approximately $2,600,000.

**ANSWER:**   Kerry denies the allegations in paragraph 23.

24.   OPC adopts and restates paragraphs 1 to 23 above as and for paragraph 24 of its Complaint.

**ANSWER:**   Kerry incorporates by reference its responses to paragraphs 1 to 23.

25.   OPC and Kerry entered into eleven (11) valid contracts via the OPC Purchase Orders sent to and accepted by Kerry by way of the subsequent Kerry Order Acknowledgments sent to OPC for the purchase and sale of the Product. (Ex. A)

**ANSWER:**   Kerry denies the allegations in paragraph 25.

26.   Kerry breached the following eleven (11) contracts when it failed to provide the Product to OPC:

| PO# | Item | Description | Qty (Lbs) | Purchase Order Sent | Kerry Confirmation | Kerry Confirmation Number |
|---|---|---|---|---|---|---|
| RP21908 | 400358 | Yogurt Cubes Wild Strawberries | 40,320 | 3/15/2019 | 3/30/2019 | 4269415 |
| RP23226 | 400369 | Yogurt Cubes Cherry-Acai | 40,320 | 5/9/2019 | 5/16/2019 | 4314906 |
| RP23227 | 400354 | Yogurt Cubes Pom Protein | 40,320 | 5/9/2019 | 5/16/2019 | 4314908 |
| RP23222 | 400358 | Yogurt Cubes Wild Strawberries | 40,320 | 5/9/2019 | 5/16/2019 | 4314884 |
| RP23223 | 400358 | Yogurt Cubes Wild Strawberries | 40,320 | 5/9/2019 | 5/16/2019 | 4314886 |
| RP23224 | 400349 | Yogurt Cubes Jamba Orange Dream | 40,320 | 5/9/2019 | 5/16/2019 | 4314895 |
| RP23225 | 400362 | Yogurt Cubes Razzmatazz | 40,320 | 5/9/2019 | 5/16/2019 | 4314901 |
| RP23269 | 400362 | Yogurt Cubes Razzmatazz | 40,320 | 5/10/2019 | 5/14/2019 | 4314828 |
| RP23533 | 400370 | Yogurt Cubes Caribbean Passion | 40,320 | 5/23/2019 | 6/13/2019 | 4327573 |
| RP21909 | 400358 | Yogurt Cubes Wild Strawberries | 40,320 | 3/15/2019 | 3/20/2019 | 4269415 |
| RP20504 | 400362 | Yogurt Cubes Razzmatazz | 40,320 | 1/15/2019 | 1/18/2019 | 4211769 |

**ANSWER:**   Kerry denies the allegations in paragraph 26.

27.   Kerry was obligated to supply Kerry the Product in compliance with the terms contained in the OPC Purchase Orders and Kerry Order Acknowledgements.

**ANSWER:** Kerry denies the allegations in paragraph 27.

28. Specifically, Kerry was obligated to deliver certain amounts and flavors of the Product to OPC between June 2019 and August 2019. (Ex. B)

**ANSWER:** Kerry denies the allegations in paragraph 28.

29. Kerry's breach of the contracts by failing to timely deliver the Product to OPC caused OPC to sustain damages.

**ANSWER:** Kerry denies the allegations in paragraph 29.

30. Specifically, Kerry breached the contracts when it failed to deliver the Product in the amount and flavor required under the OPC Purchase Orders, and within the time agreed under the OPC Purchase Orders and corresponding Kerry Order Acknowledgments.

**ANSWER:** Kerry denies the allegations in paragraph 30.

31. OPC has performed all obligations required of it under its contracts with Kerry.

**ANSWER:** Kerry denies the allegations in paragraph 31.

32. OPC has given Kerry notice of this claim.

**ANSWER:** Paragraph 32 contains only a legal conclusion to which no response is required. To the extent that a response is required, Kerry denies the allegation in paragraph 32.

33. Kerry was given an opportunity to cure its breaches under the parties' contracts and failed to do so.

**ANSWER:** Paragraph 33 contains only legal conclusions to which no response is required. To the extent that a response is required, Kerry denies the allegations in paragraph 33.

34. As a result of Kerry's failure to supply the Product, OPC was not able to distribute or sell Jamba At Home Smoothies.

**ANSWER:** Kerry denies the allegations in paragraph 34.

35. Due to Kerry's failure to supply the Product, OPC sustained actual, incidental and consequential damages in excess of $2,600,000.

**ANSWER:** Kerry denies the allegations in paragraph 35.

WHEREFORE, Plaintiff, Oregon Potato Company d/b/a Rader Farms, requests that judgment be entered in its favor and against Defendant Kerry, Inc., together with costs, prejudgment interest and any other just and appropriate relief.

**ANSWER:** Kerry denies that OPC is entitled to any of the relief it requests in its prayer for relief.

## AFFIRMATIVE DEFENSES

Kerry asserts the following affirmative defenses in response to OPC's Complaint, while also reserving the right to raise additional affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Waiver)

The Complaint is barred by waiver. Even assuming, *arguendo*, that OPC once possessed a cause of action against Kerry and/or a right to recover against Kerry, OPC was aware of the existence of that right, and it voluntarily and intentionally waived its right by, *inter alia*, accepting deliveries of yogurt chips that were allegedly untimely or incomplete and cancelling the purchase orders at issue in OPC's Complaint.

### THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

The Complaint is barred by estoppel. OPC accepted deliveries of yogurt chips from Kerry that were allegedly untimely or incomplete. In reasonable reliance upon these actions, Kerry concluded, to its detriment, that it could provide deliveries of yogurt chips that were allegedly untimely or incomplete without incurring liability to OPC. After having induced the foregoing reasonable reliance on the part of Kerry, OPC sent purchase orders to Kerry for yogurt chips, cancelled the purchase orders before Kerry could finish supplying some of the requested yogurt

chips, and brought the current lawsuit against Kerry for allegedly failing to make timely deliveries of yogurt chips.

### FOURTH AFFIRMATIVE DEFENSE
### (Force Majeure)

The Complaint is barred by force majeure. Any alleged nonperformance or delay on the part of Kerry was caused by factors outside of Kerry's control, including, but not limited to, a breakdown of equipment used to manufacture the yogurt chips.

### FIFTH AFFIRMATIVE DEFENSE
### (Commercial Impracticability/Impossibility)

Kerry is excused from completing its performance under the alleged contracts with OPC because performance was rendered commercially impracticable or impossible by a number of events at Kerry's manufacturing plant which the parties did not reasonably foresee at the time of alleged contract formation. These events included a breakdown of equipment used to manufacture the yogurt chips.

### SIXTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

OPC has failed to mitigate its damages, if in fact there are any. Under Wisconsin law, OPC must use all reasonable means to avoid or minimize its alleged damages. OPC could have avoided or minimized its alleged damages by, for example, obtaining yogurt chips from a different supplier or shifting from Jamba At Home Smoothies to a different product for which yogurt chips are not an ingredient. OPC failed to do either of these things or to otherwise minimize or avoid its damages, and it may not recover for any harm it could have reasonably avoided. Additional relevant facts are in OPC's possession.

**WHEREFORE**, Kerry prays that:

    A.    This Court grant judgment in its favor and against OPC;

    B.    OPC take nothing on its claims;

    C.    This Court grant Kerry all other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(c), Kerry demands a trial by jury on all issues so triable.

Respectfully submitted,

THOMPSON HINE LLP

*/s/ Peter J. Kocoras*
Peter J. Kocoras
20 North Clark Street, Suite 800
Chicago, Illinois 60602
(312) 998-4241
peter.kocoras@thompsonhine.com

Jesse Jenike-Godshalk, Esq.
312 Walnut Street
Fourteenth Floor
Cincinnati, Ohio 45202
(513) 352-6702
jesse.jenike-godshalk@thompsonhine.com

Date: April 6, 2020

*Attorneys for Defendant Kerry Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2020 a copy of the foregoing was filed electronically, and that notice of this filing will be sent to registered parties by operation of the Court's electronic filing system.

*/s/ Peter J. Kocoras*
*Peter J. Kocoras*
