IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

OREGON POTATO COMPANY, doing business as
RADER FARMS,

                  Plaintiff,

v.

KERRY INC.,

                  Defendant.

OPINION and ORDER

20-cv-92-jdp

---

       This case for breach of contract is scheduled for a jury trial on July 11. Plaintiff Oregon Potato Company (which calls itself OPC) alleges that it suffered millions of dollars in damages because defendant Kerry, Inc. failed to timely fulfill purchase orders that OPC submitted for yogurt cubes to be used in OPC's smoothie mixes.

       Kerry moves to strike the testimony of Michael LoGiudice, OPC's damages expert. Dkt. 177 and Dkt. 235. LoGiudice submitted two reports, one dated October 22, 2021, and the other dated January 7, 2022. Dkt. 174 and Dkt. 184. Kerry objects to testimony based on the original report primarily because it is irrelevant and not helpful to the jury; Kerry challenges testimony based on the supplemental report as untimely. The court concludes that the challenged testimony isn't admissible, but the court will give OPC an opportunity to submit a revised report that complies with this order.

ANALYSIS

**A. Original report**

       Kerry moves to strike LoGiudice's testimony about the following topics in his original report: (1) lost profits based on orders other than those that are at issue in this case; (2) lost

profits for smoothie flavors other than the five requested in the orders at issue; (3) the costs of reformulating the product; (4) royalty payments; (5) prejudgment interest; (6) Kerry's intent; (7) foreseeability of OPC's damages; and (8) Kerry Group, which is Kerry, Inc's parent company. In the summary judgment opinion, the court excluded evidence related to topics (2), (3), and (4), *see* Dkt. 181, at 28–29, and later denied OPC's motion for reconsideration on those issues, *see* Dkt. 201, so the court will grant that part of Kerry's motion to exclude LoGiudice's testimony. The court will also grant Kerry's motion on the issues of foreseeability and Kerry's intent because OPC doesn't respond to Kerry's arguments on those issues. The court addresses Kerry's remaining objections below.

1.  **Scope of loss period for lost profits calculation**

Kerry objects to LoGiudice's lost profits calculations because it is based on an assumption that OPC is entitled to damages for "hypothetical purchase orders that are not at issue in this case." Dkt. 178, at 14. And because LoGiudice's lost profits calculation groups together lost profits from the "hypothetical" orders with lost profits from the orders that are in dispute, Kerry asks the court to exclude all of LoGiudice's testimony about lost profits. The court agrees with Kerry that LoGiudice's lost profits analysis is based on a faulty assumption. But the court will give OPC an opportunity to file an amended report that corrects the defect.

When calculating OPC's lost profits, LoGiudice assumed that the relevant time period begins when Kerry first began falling behind on fulfilling OPC's orders in March 2019 and "continues until the Plaintiff's profitability returns to what it would have been **but for** the actions of the Defendant," which LoGiudice says was in January 2021. Dkt. 174, at 29 (emphasis in original). LoGiudice doesn't clearly explain what he means by that, but when discussing the sales of the flavor Razzmatazz, he acknowledges that the orders at issue in this

2

case would have provided enough yogurt cubes "to meet [OPC's] production demands through November 2019." LoGiudice's loss period extends beyond that because he believes that "it is reasonable to expect that OPC would have placed additional orders for Razzmatazz yogurt cubes to supply its yogurt-cube production for the months following November 2019." *Id.* at 18.

LoGiudice clarified in his deposition that his lost profits calculation is based not just on projected sales from the ten purchase orders at issue in this case, but also on sales from additional orders that OPC would have continued placing with Kerry after that:

> There are purchase orders that OPC issued that were not fulfilled. And had they been fulfilled, it's likely that the normal pattern would have continued, in other words, put in an order, get a shipment, put in an order, get a shipment. There is nothing that I've seen in the record that would indicate that had Kerry been meeting its delivery commitments, there is nothing to indicate that it wouldn't have just continued . . . . [T]he [lost profits] calculation presupposes that in the but for world Kerry would have made its deliveries and OPC would have ordered sufficient quantities of product to continue production.

Dkt. 179, at 157:2–11 and 158:4–8.

The problem with LoGiudice's analysis is that it assumes that Kerry was *required* to continue doing business with OPC after fulfilling the ten purchase orders. But that's incorrect. OPC is entitled only to the benefit of the bargain that it struck, and that benefit was to be supplied with yogurt cubes for particular purchase orders. OPC didn't have a long-term supply contract with Kerry, so Kerry had no obligation to continue supplying OPC with yogurt cubes after fulfilling a particular order.

Under the UCC, a buyer is entitled to consequential damages "resulting from the seller's *breach*." Wis. Stat. § 402.715 (emphasis added). So OPC can recover lost profits caused by each breach that it proves at trial, but it isn't entitled to base its damages on a scenario in which

3

Kerry continued fulfilling new orders. Those additional lost sales might be a consequence of OPC's failure to find another yogurt supplier or the additional time it took for OPC to reformulate its mixes without yogurt cubes. But neither of those things were caused by Kerry's alleged breaches.

OPC contends that it is entitled to recover for lost profits based on future purchase orders because Kerry knew that OPC couldn't get yogurt cubes from another supplier and that OPC would have to reformulate the product, making it reasonably foreseeable that OPC would continue suffering losses even beyond the ten purchase orders. But OPC needs to prove more than just foreseeability; it must also prove causation. If Kerry had simply refused to accept OPC's ten purchase orders, it would have been just as foreseeable that OPC would have difficulty finding an alternative. But in the absence of a long-term supply contract, Kerry could not be held liable for failing to accept those orders. The same principle applies here. OPC must connect its damages to a breach by Kerry, not simply to OPC's preferred outcome.

Under OPC's view, if Kerry had failed to fulfill even one accepted purchase order, and OPC chose to stop submitting new purchase orders as a result, Kerry would be on the hook for all the expenses OPC incurred while trying to reformulate the product, regardless how long that took.  But the nonbreaching party is entitled to only those consequential damages that are contemplated by the parties' agreement. *Peterson v. Cornerstone Prop. Dev., LLC*, 2006 WI App 132, ¶ 50, 294 Wis. 2d 800, 720 N.W.2d 716. It cannot be reasonably inferred from the purchase orders in this case that Kerry was accepting responsibility for any damages other than those caused by the breach of the purchase order at issue.

LoGiudice's report doesn't separate the lost profits caused by the alleged breaches from the lost profits caused by an inability to fulfill additional orders. So OPC may not rely on

LoGiudice's report to prove lost profits. But the court will give LoGiudice an opportunity to submit a revised report that complies with this order. Specifically, LoGiudice's lost profits analysis must be limited to the profits that OPC would have made had Kerry fulfilled the purchase orders at issue in this case, without relying on other orders that OPC never placed. The court will also give Kerry an opportunity to depose LoGiudice on his new report, to challenge its admissibility, and to submit a new rebuttal report.

### 2. Prejudgment interest

LoGiudice included a short section in his report about the calculation of prejudgment interest. Dkt. 174, at 35–36. The parties agree that the determination of whether a prevailing party is entitled to prejudgment interest is a question of law for the court to decide, not the jury. *See Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 438, 265 N.W.2d 513, 529 (1978). If OPC prevails at trial and the jury awards damages, OPC will have an opportunity to argue that it should be awarded prejudgment interest and what the rate should be. The court will grant this aspect of Kerry's motion to strike.

### 3. Evidence about Kerry Group

Kerry Group is Kerry, Inc's parent company. Kerry moves to exclude any reference by LoGiudice to Kerry Group and specifically LoGiudice's discussion about Kerry Group's tax rate and its size relative to OPC. OPC doesn't oppose excluding testimony about Kerry Group's taxes, but OPC says that testimony about Kerry Group's size is relevant "to knowledge of industry, resources available to the wholly-owned subsidiary Kerry Inc., and Kerry's undisputed knowledge of the licensing agreement between OPC and Focus Brands." Dkt. 191, at 22. But OPC doesn't explain why any of those issues are relevant to any claim or defense in this case.

And even if any of those issues were relevant, they wouldn't be a proper subject for a damages expert. The court will grant this aspect of Kerry's motion.

## B.  Supplemental report

LoGiudice's supplemental report purports to do two things: (1) account for the ruling in the summary judgment decision that OPC is limited to damages for the five smoothie flavors that it requested in the purchase orders at issue in this case; and (2) rebut the opinion of Kerry's damages expert. Kerry objects to both parts of the report on procedural grounds.

### 1.  Opinions in response to the summary judgment decision

The purchase orders at issue in this case included five smoothie flavors, but LoGiudice's lost profits analysis in his original report included seven other flavors on the theory that the other flavors suffered "reputational harm." Dkt. 174, at 19. In the summary judgment decision, the court limited OPC to the five flavors requested in the purchase orders. LoGiudice's supplemental report is limited to those five flavors. But Kerry objects to the new report on the ground that it does much more than simply account for the court's summary judgment ruling. Kerry's primary objection is that LoGiudice's supplemental report includes a regression analysis, taking variables into account that weren't included in the original report. As a result, Kerry contends that the supplement includes new opinions that aren't permitted under Federal Rule of Civil Procedure 26.

Kerry's objections are largely moot in light of the court's decision to allow OPC to file another expert report. Because the court is allowing Kerry to depose LoGiudice again and to challenge the admissibility of the new report, the court can discern no harm in allowing LoGiudice to include a regression analysis in the report. The court will deny this aspect of Kerry's motion.

6

### 2. Rebuttal to Kerry's expert

LoGiudice's supplemental report also includes a section criticizing the opinions of Robert Brlas, who is Kerry's damages expert. Dkt. 188, at 25–34. Kerry objects on the ground that the scheduling order doesn't provide for a third round of expert reports, so OPC should have sought leave to file a rebuttal report.

Kerry is correct that OPC should have requested leave of court before submitting a rebuttal report. The preliminary pretrial conference order states that the disclosure of experts is "to be determined by the parties." Dkt. 13, at 2. The parties agreed to two rounds of expert reports, not three, so OPC needed leave of court.

But, again, the court can discern no unfair prejudice to Kerry by allowing the rebuttal and Kerry doesn't identify any. After all, Kerry's expert had an opportunity to criticize OPC's expert, so LoGiudice should have the same opportunity. LoGiudice may incorporate his rebuttal opinions into his new report.

ORDER

IT IS ORDERED that:

1. Defendant Kerry, Inc's motion to exclude expert testimony based on Michael LoGuidice's original expert report, Dkt. 177, is GRANTED.

2. Kerry's motion to exclude expert testimony based on LoGiudice's supplemental report, Dkt. 235, is DENIED as moot.

3. Plaintiff Oregon Potato Company may have until May 3, 2022, to submit a revised expert report that complies with this order. Kerry may have until May 31, 2022, to

7

depose LoGiudice, challenge the admissibility of any opinion in the new report, and submit a supplemental rebuttal report.

Entered April 19, 2022.

                                    BY THE COURT:

                                    /s/

                                    _____
                                    JAMES D. PETERSON
                                    District Judge